UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JENNIFER MOULTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-cv-00486-SNLJ |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Jennifer Moulton's applications for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Moulton now seeks judicial review. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, this Court will **AFFIRM** the Commissioner's decision.

**I.   Procedural History**

Moulton's application was denied at the initial determination level.  She then appeared before an Administrative Law Judge ("ALJ").  The ALJ found Moulton is not disabled because her symptoms were not supported by the medical evidence available. Moulton then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration.  The Appeals Council denied review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§

1

404.981, 416.1481.  Moulton now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental

2

ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant

is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. The ALJ's Decision

At Step One, the ALJ found Moulton met the insured status requirements through December 31, 2019, and had not engaged in substantial gainful activity since November 5, 2014. (Tr. 18). At Step Two, the ALJ found Moulton suffers from two medically

4

determinable impairments: (1) affective disorder—to include depression and bipolar; and (2) obesity. (Tr. 18).[1] At Step Three, the ALJ concluded Moulton does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 19).

Next, in beginning the analysis of Step Four, the ALJ determined Moulton's RFC.[2] The ALJ found that Moulton

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to simple, routine tasks involving no direct interaction with the public, causal and infrequent interaction with co-workers, and occasional interaction with supervisors.

(Tr. 22). As part of this determination, the ALJ found Moulton's allegations about her intellectual symptoms' intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23-24). The ALJ noted Moulton's daily activities, inconsistent medication compliance, up-and-down moods tracking with situation-dependent stressors, employment-seeking efforts, and a dearth of supportive clinical data as reasons to discount Moulton's allegations. (Tr. 23-25). The ALJ also discounted the opinions of one of Moulton's treating physicians, Dr. Boyer, because these opinions were not substantiated by underlying treatment records.

---

[1] Moulton makes no arguments before this Court related to her obesity-related impairments, but instead focuses purely on the alleged disabling effects of her mental impairments.

[2] In the past, there has been some confusion as to when the RFC is determined, which affects who holds the burden of proof in establishing an appropriate RFC. In this Circuit, it has been held that "the RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (*quoting Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000)).

(Tr. 26-27). All in all, the ALJ found the total record was simply unsupportive of the alleged limitations urged by Moulton. (Tr. 31-32).

With an RFC determination in hand, the ALJ continued on through Step Four to determine whether Moulton can perform her past relevant work given her designated RFC. The ALJ determined Moulton cannot perform any past relevant work. (Tr. 33).

At Step Five, the ALJ analyzed whether Moulton can successfully adjust to other work. The ALJ noted Moulton's ability to perform work at all exertional levels has been compromised by non-exertional limitations. Therefore, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these non-exertional limitations erode Moulton's occupational base. The VE testified Moulton is able to perform work as a cleaner, lab equipment cleaner, and mail sorter, even after considering all of the limitations in Moulton's RFC. (Tr. 34). The ALJ then found these jobs exist in significant numbers in the national economy and concluded Moulton is not disabled. (Tr. 34).

## IV.   Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting*

*Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

**V.    Discussion**

Moulton seeks reversal of the ALJ's decision on two bases. First, she argues the ALJ's decision was "not supported by some medical evidence" because the ALJ "afforded every medical opinion offered little to no weight." Second, she argues the ALJ inappropriately gave "little weight" to the opinions of her treating psychiatrist, Dr. Boyer, who completed two questionnaires indicating Moulton suffers debilitating depression and bipolar disorder. These arguments, attacking the evaluative and foundational strength of the ALJ's decision, are addressed together.

The Eighth Circuit's oft-cited *Lauer* opinion explicitly requires an ALJ to rely on at least some medical evidence in formulating a claimant's RFC. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (finding "the ALJ was required to consider at least some supporting evidence from a professional"). Indeed, the Eighth Circuit recently emphasized that "a claimant's RFC is a medical question," and, as such, "it must be

7

supported by *some medical evidence* of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (emphasis added). But, this is not to say that a particular *medical opinion* must be adopted; to the contrary, ALJs are within their discretion to discount every single medical opinion proffered to them so long as they "develop the record further to include *medical evidence*"—not simply medical opinions—"of a claimant's limitations." *Flynn v. Astrue*, 513 F.3d 788, 792 (8th Cir. 2008) (emphasis added); *Hensley*, 829 F.3d at 932 (noting "in the absence of medical opinion evidence," the ALJ must have "affirmative medical evidence supporting the ALJ's [RFC] findings"); *see also Wasinger v. Berryhill*, 2017 WL 2257357 at *2 (W.D. Mo. May 23, 2017) (ALJ did not err in giving "little weight" to "every medical opinion of record" where record, taken as a whole, provided sufficient medical evidence to support ALJ's conclusions).

This means an ALJ is not hamstrung to adopt the opinions of a particular medical provider where it is either unsubstantiated or else contrary to the record as a whole. *See Perks v. Astrue*, 687 F.3d 1086, 1094 (8th Cir. 2012). To be sure, the ALJ has an overarching responsibility to consider "all evidence"—not merely medical opinions—while weighing competing testimony and resolving evidentiary conflicts that arise, which sometimes means refusing medical opinion evidence altogether. *Wildman v. Astrue*, 596 F.3d 959, 969-970 (8th Cir. 2010) (stating ALJ must determine an RFC "based on all relevant evidence" and affirming ALJ's decision based on ALJ's own review of the record, treatment notes, medical opinions, claimant's sporadic work history and lack of motivation, and claimant's non-compliance with diet and medication); *see also Myers v.*

*Colvin*, 721 F.3d 521, 526-527 (8th Cir. 2013) (affirming RFC without medical opinion evidence).

In this case, Moulton's chief criticism is that the ALJ discounted two checkbox format "mental residual functional capacity questionnaires" completed by Dr. Boyer in August 2015 and October 2016. (Tr. 26-27, 31, 465-469, 921-925). The ALJ gave these questionnaires little weight because Boyer's treatment notes "rarely reported any abnormalities" and never mentioned several of the "signs and symptoms" listed on the questionnaire, including manic episodes and paranoid thinking. (Tr. 24, 26, 31, 77). Moreover, at the hearing, the ALJ noted how the two questionnaires—more than a year apart—were suspiciously similar in wording, despite intervening records suggesting largely benign clinical exams and some measure of improvement. (Tr. 26, 77-85). Given their similarity, the ALJ hoped to see underlying treatment-related records to corroborate the questionnaires' conclusions, but found "no counseling records in the file" or, at least, "very few, if any, counseling records." (Tr. 77). Moulton was then questioned whether Boyer ever did "any kind of testing" related to her memory, focus, and attention, to which she replied "she can [just] tell"—referring to Boyer—and is "trained to know what things to look for." (Tr. 80). Unsatisfied, the ALJ explained

> [There is] nothing in the record to really support the limitations that are being suggested because, a lot of times, the clinical signs are marked as generally normal—not saying totally normal but generally normal, and so that's part of the disconnect. The counseling notes could fill that [in] if I have them, but I don't …
>
> … The problem is, if I have to make a decision, I can't even base it on the medical source statement unless it's backed up by the record. That's the law … If the counseling records are supportive of it, then it can be done

9

using the counseling records, but at this point, there's a big disconnect in the medical source statement. I got one that's just floating out there with no records, and I've got the other one that is—does not appear to be supported.

(Tr. 84-85).

In the decision, the ALJ also raised a multitude of examples from the record suggesting Moulton's symptoms were largely situational—related to car accidents, parenting issues, appliance breakdowns, financial concerns, and health insurance worries, to name a few—and noted up-and-down symptomology that seemed to track with these situations.(Tr. 24-31). The ALJ went on to point out a lack of compliance in taking prescribed medication, highlighting Moulton's excuse that "she was having problems with her cell-phone she used to set reminders." (Tr. 26). And the opinions of Moulton's primary care physician, Dr. Hani Soudah, were described as "consistently contradict[ory to] the medical source statements [of] Dr. Boyer." (Tr. 32). Indeed, many times Soudah's records would deny symptoms of depression and anxiety, or else refer to them as "moderate" or merely "somewhat difficult," while noting "appropriate" or "normal" insight, mood, memory, affect, behavior, orientation, and appearance. (Tr. 682, 695, 704, 714, 725, 731, 735, 744, 751, 760, 765, 774). When Soudah indentified Moulton as having debilitating depression, he would merely "refer to [the findings of] Dr. Boyer." (Tr. 696). Finally, the ALJ noted a series of so-called daily activities by Moulton that appeared inconsistent with Dr. Boyer's conclusions, including seeking employment (teaching), taking trips to Florida, performing household chores (though she says she doesn't "want" to do them), shopping, driving, walking, exercising, reading, playing on Pinterest, playing video games, watching TV, handling her own financial matters,

10

spending time with others, attending sporting events, and having the ability to finish what she starts. (Tr. 20-21, 23-24, 251-254, 258).

Upon this record, the Court finds the ALJ's decision is supported by substantial evidence. As is required, the ALJ thoroughly considered "all evidence" available in concluding Moulton was not disabled. *Wildman*, 596 F.3d at 969-970. Much of the evidence relied upon by the ALJ has been embraced by the Eighth Circuit. *See, e.g., Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) (daily activities such as caring for children, preparing meals, doing housework, shopping, handling money, watching TV, and driving a car indicate an ability to work); *Hensley*, 829 F.3d at 935 (failure to follow course of treatment demonstrates less disabling mental impairments than otherwise suggested); *Gates v. Astrue*, 627 F.3d 1080, 1082-1083 (8th Cir. 2010) (ALJ did not err in finding claimant's depression and anxiety situational, related to marital problems, where symptoms improved with medication, were deemed mild, and the only contrary evidence provided no clinical or objective support); *Melton v. Apfel*, 181 F.3d 939, 942 (8th Cir. 1999) (fact that claimant continues to seek out work belies a finding of disability). And the Court finds no error in discounting the questionnaire opinions of Dr. Boyer, which were in checkbox format, inconsistent with the total record, and lacking underlying, objective clinical data. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) ("[W]e have recognized that a conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration.'").

Thus, as was already explained, even if the ALJ ultimately gave little weight to every available medical opinion, there was no requirement that she rely on any medical

opinions so long as there was sufficient medical evidence—in total—to support the conclusions made. *See Flynn*, 513 F.3d at 792. What the ALJ was tasked with obtaining and evaluating was "*all the relevant evidence*, including"—but not limited to—"medical records, observations of treating physicians and others, and claimant's own description of her limitations." *Nash v. Commissioner*, 907 F.3d 1086, 1089 (8th Cir. 2018) (emphasis added). Such evidence was appropriately considered here, including the largely benign or else situational findings of Dr. Soudah, Moulton's daily activities, her lack of medication compliance, the up-and-down moods tracking with a number of situation-dependent stressors, and a dearth of objective clinical data to otherwise corroborate Dr. Boyer's conclusions. The Court finds no error.

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

So ordered this 21st day of February 2019.

                                              _____
                                              STEPHEN N. LIMBAUGH, JR.
                                              UNITED STATES DISTRICT JUDGE